IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LINDA R. CARROTHERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV905 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Linda R. Carrothers, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying her claims for Supplemental Security Income ("SSI") under Title XVI of the Act.[1] The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits on November 19, 2004 alleging a disability onset date of March 31, 2000. (Tr. 63.)[2] The application was denied initially and upon reconsideration. (*Id.* at 31, 38.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 29.) At the December 5, 2007 hearing were Plaintiff, her

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).
[2] Transcript citations refer to the administrative record.

attorney, and a vocational expert ("VE"). (*Id.* at 483.) The ALJ determined that Plaintiff was not disabled under the Act and the Appeals Council denied Plaintiff's request for further review. (*Id.* at 2-5, 7-16.) On August 20, 2008, Plaintiff filed a complaint in this Court, seeking review of the denial of benefits. (1:08cv584, Docket Entry 1.) This Court entered a consent order on November 20, 2008 reversing the Commissioner's decision and remanding the cause to the Commissioner for further proceedings. (*Id.*, Docket Entries 11, 12.) On October 8, 2010 the Appeals Council remanded the case to the ALJ for further administrative proceedings, in part because the ALJ's step four analysis lacked support. (Tr. 554-57.)

Plaintiff filed an additional application for SSI benefits on October 15, 2008. (*Id.* at 570.) The Appeals Council's remand order consolidated this claim with the original claim. (*Id.* at 557.) A second hearing was held before the ALJ on March 16, 2009, which Plaintiff, her attorney, and a VE attended. (*Id.* at 735.) The ALJ again determined that Plaintiff was not disabled. (*Id.* at 528-40.) Plaintiff did not seek timely review with the Appeal's Council and the Commissioner's decision became final for purposes of review. (*Id.* at 524-26.)

## II. FACTUAL BACKGROUND

Plaintiff was fifty-three years old when she filed for benefits, had completed high school, and her past relevant work was as a public health and home health nurse. (*Id.* at 538-39.)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final

2

decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not

disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

Under the Social Security Act, an SSI claimant is disabled where he or she lacks the ability to do "any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. *Id.* § 1382c(a)(3)(B).

### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).
[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 416.910.

4

Case 1:10-cv-00905-JAB-JLW Document 19 Filed 04/19/13 Page 4 of 19

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both her residual functional capacity[5] ("RFC") and her vocational abilities. If so, the claimant is not disabled.

20 C.F.R. § 416.920(a)(4).

Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity at any time since her application date of November 19, 2004. (Tr. at 533.) The ALJ next found in step two that Plaintiff had severe impairments: eczema/dermatitis, allergic rhinitis/asthma, and obesity. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 534.) The ALJ reached the fourth step of the sequence, concluding that Plaintiff could perform her past relevant work as a public health and home health nurse as she performed it, at which point he determined that Plaintiff was not disabled from the date of her

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. § 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

initial application for benefits to the date of the decision. (*Id.* 538-40.) The ALJ also made additional findings at step five, concluding that alternative jobs also existed in significant numbers within the national economy that Plaintiff could perform. (*Id.* at 539.)

## B. Residual Functional Capacity Determination

Prior to steps four and five, the ALJ determined Plaintiff's RFC based on the ALJ's evaluation of the evidence, including Plaintiff's testimony, and the findings of health care providers. (*Id.* at 534-38.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform work with certain exertional and nonexertional limitations. She could lift, carry, or push/pull up to 50 pounds occasionally or 25 pounds frequently. Plaintiff could sit for three hours at a time or six hours in a work day, stand for three hours at a time or six hours in a work day, and walk for three hours at a time or four hours in a work day. Plaintiff had no postural, manipulative, or mental limitations. She was unable to wear latex gloves and had to be permitted to wear non-latex gloves. Plaintiff was unable to tolerate more than minimal exposure to pulmonary irritants such as toxic gases, chemical fumes, cats or dogs, or perfume and had to wear a protective cotton face mask when exposed to them. (*Id.* at 534-35.) In reaching a conclusion about Plaintiff's RFC, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional assessment." (*Id.* at 536.)

### C. Past Relevant Work

The ALJ found in step four that Plaintiff could engage in her past relevant work as a public health and home health nurse as she performed it. (*Id.* at 538.) The ALJ concluded that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (*Id.*) The ALJ justified these conclusions by stating:

> [T]he claimant testified that she worked as a home health care nurse and as a public health nurse. . . .[6] The undersigned asked the claimant additional questions so that the issue of her past work was thoroughly covered. The vocational expert testified the claimant had worked as a nurse in a number of settings but all of her work was skilled and performed at the light level of exertion.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually performed. As discussed above, the claimant testified that she discovered her latex allergy while working as a public health nurse in 1990, that she continued working at this job for several years until her son was born and later returned to work as a home health nurse, and that she was allowed to use non-latex . . . . gloves, either vinyl gloves or cotton gloves depending on the task performed. The vocational expert testified that her jobs were performed in a normal environment, that the clinic job required contact with the public and the home health nurse involved more one on one contact, and that she could perform both past nursing jobs with the residual functional capacity given above since she was allowed to wear non-latex gloves.
>
> In response to questions by the claimant's attorney, the vocational expert testified that these jobs require public contact

---

[6] It appears that the VE slept through part of Plaintiff's hearing testimony. The ALJ noted in his decision that "[C]ounsel brought to the undersigned's attention that the vocational expert slept through a portion of the claimant's testimony. While this is unfortunate, it was not in violation of the claimant's due process because the vocational expert responded to the hypothetical questions posed by the Administrative Law Judge and the claimant's counsel." (Tr. 538.) Plaintiff has not expressly alleged error or prejudice stemming from this incident and the undersigned has found none.

and require nurses to wash their hands before seeing patients. He testified that the jobs cited could not be performed by someone who did not wear clothing, or who had to change clothes frequently during the work day. As discussed above, I did not find the claimant's testimony regarding the intensity and limiting effects of her symptoms to be fully credible.

(*Id.* at 538-39.)

As indicated, in reaching these conclusions, the ALJ relied on the testimony of the VE. The ALJ posed the following hypothetical to the VE:

> I want you to assume a hypothetical claimant 57 years old with a college education who is trained as a medical nurse, clinical nurse. I want you to assume that that individual can, lift, carry, push, pull 50 pounds occasionally, 25 pounds frequently. Can sit for three hours at a time, a total of six hours a day. Stand for three hours at a time a total of six hours a day. Walk for three hours a total of six a day. There would be no additional limitations for postural or sensory. She does have a skin problem, skin allergies and as a result of that she would be unable to tolerate direct contact with latex. I think she has also named some other things here. She says she gets – being around cologne causes her to have headaches. She says she has trouble around gasoline, dogs, cats, grass, bees, cigarette smoke. Okay. I find that she would not be able to tolerate more than minimal exposure to these things, or any other toxic chemicals or gas. This job should allow her to wear thin cotton clothes gloves [or] vinyl gloves. It also should allow her to wear a protective cotton face mask when she is exposed to some of these toxic things like chemicals or gasses, or so forth. Now there would be – I find there would be no limitations in fine or gross manipulations. No limitations other than the chemical or the dust. No extreme heat. That would be the only environmental limitations she would have. She would have no mental limitations. Now with those limitations would she be able to do either of the jobs she's done in the past?

(Tr. 777-78.)

The VE responded that:

> . . . . In her job she did have to wear gloves and therefore, if some other types of glove could be used then the jobs could be performed. The only other problem we have would be the issue of individual contact and I'm not sure to what extent the mask would take care of the issue of – well we don't have cigarette smoke. The only thing we might have would be some perfumes or colognes, but those are – I also might add that in these kinds of settings that she was in, there wasn't continued or constant interaction with other people. It was limited and usually for only brief periods of time. I would also point out that all of these places that she has worked, with the possible exception that if she were going into the field, were performed in what is called a normal environment with normal ventilation, cooling, heating, etc.

(*Id.* at 778-79.)

The ALJ queried further:

> Okay. Then given my hypothetical, can you give any indication of whether or not based upon that hypothetical, she would be able to do her job as a staff nurse or as a . . . home health nurse[.]

(*Id.* at 779.)

And the VE concluded:

> I would say for the most part if the arrangement were such that she did not have to wear latex gloves and she could use another type of vinyl gloves or even there are some other materials out there, yes.

(*Id.*)

Plaintiff's counsel later cross-examined the VE who testified that the positions of home health nurse and health department nurse (1) require the worker to use needles, wear clothing, and have direct contact with patients, (2) would not provide for "a lot of clothes changing or showering during the work day," and (3) require the worker to wash her hands either with soap

9

or sanitizer. (*Id.* at 791-92.) The ALJ then asked the VE whether the "hypothetical claimant [would] be able to do . . . the two nurse jobs . . . ?" (*Id.* at 793.) The VE responded that if a worker could use non-latex gloves she "could [perform the nursing jobs] under the limitations that you've identified." (*Id.*)

### D. Adjustment to Other Work

Although the ALJ found that Plaintiff could perform her past relevant work at step four, the ALJ made additional findings at step five. The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C.A. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i); 20 C.F.R. § 416.202-03; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that she cannot do any work she has done in the past because of her severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ found that Plaintiff could perform her past relevant work. However, the ALJ found further that even if the burden shifted to the Agency to establish that there were other jobs in the national economy that existed in significant numbers, based on Plaintiff's age education, vocational background, and the relevant Rules, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and that Plaintiff was not disabled from November 19, 2004, the date the application was filed. (Tr. at 539-40.)

More specifically, the ALJ concluded:

> [T]he Administrative Law Judge considered whether there

10

> were any jobs in the national economy that the claimant could perform, given her age, education, work experience, and the residual functional capacity found herein. The claimant was born on June 17, 1951 and was 53 years old, which is defined as an individual of advanced age, on the date the application was filed (20 CFR 416.963). The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964). The vocational expert testified that claimant has acquired work skills from past relevant work such as knowledge of anatomy, pharmacology, and medical procedures, which could be transferred to skilled and semiskilled light and sedentary jobs such as occupational or school nurse with more than 3,000 positions in North Carolina, admitting clerk with about 400 positions in North Carolina, and insurance examiner with 350 to 400 positions in North Carolina. He testified that occupational and school nurses would do tasks such as taking temperatures, and that admitting clerks would have contact with a lot of people. He testified that insurance examiners work in an office setting with co-workers and that they do not do physical examinations but review medical documents and translate them into layman's language for attorneys and other personnel. He also cited a number of unskilled light jobs which could be performed by an individual with the residual function capacity given above. He testified that there were no medium jobs which could be performed with the environmental limitations given above. Thus, even if the claimant could not perform her past work and the burden shifted to the Agency to establish that there are other jobs which exist in significant numbers in the national economy which the claimant could perform consistent with her age, education, and vocational background, based on this information and using Rules 202.07 and 202.15 as a "framework for decision making," a finding of "not disabled" is also appropriate.

(*Id.* at 539.)

In so concluding, the ALJ relied on the VE's testimony. At the hearing, the VE responded to the ALJ's query about what other types of jobs a person with Plaintiff's limitations could perform. In pertinent part, the ALJ responded:

> Well I think there would be in some of these jobs that could be considered . . . .

11

> [I]t would probably fit basically under what I would call an occupational health nursing . . . . It's simply called a staff nurse, occupational or . . . a school nurse . . . .
>
> I think these same kinds of skills could [also] be utilized in another type of setting that might be appropriate. . . .
>
> One would be admitting clerk which is at the semi skilled level . . . .
>
> Now there's another area too that we find a lot of people with this kind of background going into these days and that is – and I think the best way to describe it is an insurance examiner and these are the individuals that are employed by health care insurance companies. . . . .
>
> We would [also] have individuals who are employed as office equipment operators.

(*Id.* at 779-86.) At this point, the ALJ queried whether "the toners [in the office equipment] cause any problems based upon my hypothetical?" (*Id.* at 786.) To which the VE replied "Well it's done very infrequently. It's not on a continuous basis." (*Id.*) The VE also testified that Plaintiff could work as a records clerk and an information clerk. (*Id.* at 787.)

During cross-examination, the VE testified that an admitting clerk will "have a lot of contact with the public," but not with a single person all day long, instead "they'll be with a variety of different people." (*Id.* at 789.) The VE added that while this position is not always performed behind a "Plexiglass type window," it sometimes is. (*Id.*) The VE testified further that the insurance examiner position took place in an office environment and that an examiner would always have to work with co-workers "usually in an office pool." (*Id.* at 790.) Likewise, the VE testified that all the other jobs he cited as alternatives to Plaintiff's past

12

relevant work were performed in an office pool type setting. (*Id.*)   Finally, the VE testified that none of these positions would permit a worker to go without clothes or change clothes during the day. (*Id.* at 791-92.)

## V.   ANALYSIS

Plaintiff contends the ALJ found that she could perform various jobs, the demands of which exceed her RFC. (Docket Entry 13 at 3.)   Plaintiff's argument is twofold.

### A. The ALJ's Step Four and Step Five Determinations Are Supported by Substantial Evidence.

First, Plaintiff claims that the jobs the ALJ concluded Plaintiff could perform are inconsistent with the "pulmonary irritants" restriction in her RFC.  Central to Plaintiff's argument is the ALJ's RFC finding that Plaintiff "is unable to tolerate more than minimal exposure to pulmonary irritants such as toxic gases, chemical fumes, cats or dogs, or perfume and must be allowed to wear a protective cotton face mask when exposed to them." (*Id.* citing Tr. 535.)   Plaintiff contends that this restriction is inconsistent with the ALJ's conclusion—itself based in part on VE testimony—that Plaintiff was not disabled because she could work in various positions.  According to Plaintiff, "the VE's testimony establishes that each job cited by the VE would expose Plaintiff to more than minimal exposure to pulmonary irritants such as perfumes." (Docket Entry 13 at 7.)   Thus, Plaintiff concludes, the ALJ erred in basing his decision on the flawed testimony of the VE and "[t]he jobs thus do not provide substantial evidence to support the ALJ's" decision. (*Id.*)   This contention lacks merit.

As for the ALJ's step four analysis, it is supported by substantial evidence. Specifically, as Defendant correctly points out (Docket Entry 18 at 4-5), the VE testified that

13

all of Plaintiff's nursing work was light in exertion and skilled and not precluded by her restrictions (Tr. 539, 775, 778-80). The VE testified further that Plaintiff's past relevant work was performed in a normal environment with normal ventilation, cooling and heating (except if in the field) and required contact with the public and/or patients, but that Plaintiff could perform both nursing jobs if allowed to wear non-latex gloves. *Id.* at 778-779; *see also id.* 539. Plaintiff also testified that she continued to work as a public health nurse after discovering her latex allergy and left that job when her son was born. *Id.* 768, 770; *see also id.* 539. Plaintiff further testified that when she returned to nursing work as a home health nurse, she was allowed to use non-latex gloves and wore vinyl or cotton gloves. (*Id.* 763, 768-770, 773; *see also id.* at 539). This is substantial evidence supporting the ALJ's conclusion that Plaintiff could perform her past relevant work.

Plaintiff disagrees, and in support points to the VE's testimony that the nursing positions involve patient contact (*id.* at 792), contact with other people (*id.* at 790.), and exposure to "perfumes or colognes" (*id.* at 778). However, Plaintiff's RFC does not prohibit Plaintiff from work involving patient contact, contact with other people, or from exposure to **any** pulmonary irritants whatsoever. Instead, Plaintiff's RFC prohibits her from anything more than minimal exposure to pulmonary irritants. While it is true that the VE testified that the nursing positions would expose a worker to "perfumes or colognes" the VE testified further "that in these kinds of settings that she was in, there wasn't continued or constant interaction with other people. It was **limited** and usually for only **brief** periods of time." (Tr. at 778.) (emphasis added) The VE also "point[ed] out that all of these places that she has

14

worked, with the possible exception if she were going out into the field, were performed in what is called a normal environment with normal ventilation, cooling, heating, etc." (*Id.* at 779.) The VE testified too that a worker with the limitations set forth in the ALJs hypothetical could perform the positions of a staff nurse or as a home health nurse. (*Id.* at 779, 793.)

Plaintiff's step five determination is also supported by substantial evidence. As Defendant correctly points out (Docket Entry 18 at 5-6), the VE testified that Plaintiff had acquired a number of transferable skills from her profession as a nurse (*id.* at 775, 779) and that they could be transferred to work such as an occupational health nurse or school nurse (*id.* at 780-781), insurance examiner (*id.* at 783-785), admitting clerk (*id.* at 782), records clerk (*id.* at 786), office equipment operator (*id.*), and information clerk (*id.* at 787). The ALJ recounted the VE's testimony about job requirements and job availability and correctly denied the claim because Plaintiff was capable of performing alternative work. (*Id.* 539-40.) Substantial evidence therefore supports the ALJ's conclusion that Plaintiff could perform other work.

Again Plaintiff disagrees, and in support points to the VE's testimony that an admitting clerk would "have a lot of contact with the public" (*id.* at 789) and that an insurance examiner would "always" have contact with co-workers and "usually" be performed in an office pool (*id.* at 789-790). Also, Plaintiff points to VE testimony that all the non-nursing positions would be performed in an office pool. (*Id.* at 790.) Nevertheless, as noted above, Plaintiff's RFC prohibits her from exposure to more than **minimal** pulmonary irritants. The VE testified that a person with Plaintiff's RFC could perform the aforementioned positions. (*Id.* at

15

781-88.) The ALJ was entitled to rely on this testimony. *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record , and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.") (citations omitted). Plaintiff presumes that working in an office pool and having frequent contact with the public would expose her to more than minimal pulmonary irritants. However, this is only speculation on Plaintiff's part.

Plaintiff asserts further that:

> It should also be noted that after cross-examination by Plaintiff's counsel, the ALJ again asked the VE whether the nursing jobs could be performed within the parameters of Plaintiff's RFC (Tr.793). The VE testified "the way you described it the real significant issue was the use of gloves" (*Id.*). This testimony by the VE reveals that he focused on the RFC restriction of using only non-latex gloves and failed to recognize the more significant restriction of no more than minimal exposure to pulmonary irritants, such as perfume.

(Document Entry 13 at 7 citing Tr. 793.) Plaintiff's assertion that the VE failed to take into consideration the pulmonary irritants restriction that the ALJ included in his hypothetical lacks merit. The VE clearly considered the pulmonary irritants restrictions a number of times over the course of his testimony and in reaching his conclusions that an individual with Plaintiff's limitations could perform her past relevant work, as well as other jobs. (*Id.* at 778-79 (pointing out that there was no cigarette smoke exposure in the nursing positions, limited contact with perfumes and colognes, and a normal environment with normal ventilation,

16

cooling and heating); *see also id.* at 786 (VE testifying that toner from office equipment would not cause problems based upon ALJ's hypothetical in regards to office equipment operator position); *id.* at 789 (noting that admitting clerk has contact with the public but not "with one person all that long" and that the job can sometimes be done behind a Plexiglas window)).

It is true that when asked at the end of cross-examination if Plaintiff could perform the two nurse jobs the VE identified, the VE said that Plaintiff could, but only if she wore non-latex gloves. (*Id.* at 793.) However, when the ALJ then asked if a hypothetical claimant could perform both jobs, the VE said "Well they could under the **limitations** that you've identified." ((*Id.*) (emphasis added.)) Nothing about this exchange suggests that the VE—who answered this query in the plural, *i.e.*, "limitations"—had somehow forgotten or disregarded the pulmonary irritants restriction.

### B. The ALJ Did Not Violate SSR 85-15 or SSR 004p.

Second, Plaintiff argues that the ALJ's decision ran afoul of two Social Security Rulings, SSR 85-15 and SSR 00-4p. (Docket Entry 13 at 4-6.) As for, SSR 85-15, Defendant correctly points out that the title itself (*Capability to Do Other Work—The Medical Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments*) reflects a lack of relevance to this case. Specifically, the ruling could have no bearing on the step four denial (capacity to perform past relevant work), because SSR 85-15 applies to step five cases (capacity to perform other work). *See Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995) (concluding that "the application of SSR 85–15 is limited to those cases in which the Commissioner finds that the claimant is not disabled at Step V"); *Groff v. Astrue*, No. C08-5058RJB-KLS, 2008 WL 4643797, *13 (W.D.

17

Wash. Oct. 20, 2008) (unpublished) (noting that "SSR 85-15 is applicable only to the issue of whether a claimant is capable of performing other work at step five").

Moreover, SSR 85-15 is irrelevant to the step five denial in this case because SSR 85-15 provides guidance only in cases where the claimant's impairments are "nonexertional," which is not the case here.  *See Sandgathe v. Chater*, 108 F.3d 978, 980–81 (9th Cir. 1997) (holding SSR 85–15 was inapplicable because the claimant had exertional and nonexertional impairments); *Roma v. Astrue*, No. 10–4351–cv, 2012 WL 147899, at *4 (2d Cir. Jan.19, 2012) (unpublished) ("SSR 85–15 . . . does not apply to a case, such as this one, in which the claimant suffers from a combination of exertional and non-exertional impairments.").  The text of SSR 85-15 itself also makes clear that the services of a VE are necessary when environmental restrictions "fall[] between very little and excessive."  SSR 85-15 ("Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a VS.")  The ALJ consulted a VE at length.  Thus, to the extent SSR 85-15 applies here, the ALJ complied accordingly and there is no error.

Last, Plaintiff's assertion that the ALJ erred in regards to SSR 00-4p, *Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, is also without merit.  Plaintiff contends that in violating SSR 85-15, the ALJ also violated the following provision of SSR 00-4p:  "SSA adjudicators may not rely on evidence provided by a VE, VS, or other reliable source of occupational information if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions."  Yet, as explained above, the ALJ did not err as to SSR 85-15.

Consequently, Plaintiff's SSR 00-4p argument also fails.

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Docket Entry 12) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) be **GRANTED** and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
April 19, 2013

19

Case 1:10-cv-00905-JAB-JLW   Document 19   Filed 04/19/13   Page 19 of 19